641 A.2d 600

**Irene M. GREEN and Martin Green, Appellants,**

**v.**

**Richard L. DOLSKY, M.D. and Collagen Corporation.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1994.

Filed May 10, 1994.

558

Lindley M. Cowperthwait, Jr., Norristown, for appellants.

Reeder R. Fox, Philadelphia, for Collagen.

Before CIRILLO, BECK and JOHNSON, JJ.

JOHNSON, Judge:

In this case of first impression, we are asked to determine whether the Medical Device Amendments of 1976 (MDA), 21 U.S.C. §§ 360c *et seq.*, 360k, to the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA), 21 U.S.C. §§ 513 *et seq.*, 521(a),

preempt state tort law claims involving Class III medical devices. Irene M. Green and Martin Green, her husband, appeal from the grant of summary judgment by the Court of Common Pleas of Montgomery County, in favor of Richard L. Dolsky, M.D., and Collagen Corporation (Collagen). Because we find no error of law in the trial court's grant of summary judgment on the basis of federal preemption, we affirm.

Irene Green developed an auto-immune disease after being treated with Zyderm Collagen Implant (Zyderm). Zyderm, which is manufactured by Collagen, is administered by subcutaneous injections to improve soft tissue deficiencies, and it is regulated under the MDA. The Federal Food and Drug Administration (FDA) has classified Zyderm as a Class III medical device that must be approved by the FDA prior to marketing. In July 1981, the FDA issued an order granting Collagen permission to market Zyderm. In 1992, the FDA reaffirmed that order.

Green filed suit against Collagen upon the theories of negligence, strict liability, breach of warranty, and fraud in obtaining FDA approval to market Zyderm. Green also sought punitive damages from Collagen. In addition, Green sued Dr. Dolsky upon the theories of negligence, failure to warn and failure to obtain informed consent. Green's husband joined the action seeking damages from both Collagen and Dr. Dolsky for loss of consortium.

Collagen filed a motion for summary judgment on the basis that the MDA expressly preempt all of the Greens' state tort law claims. Following oral arguments, the trial court granted Collagen's motion for summary judgment. The Greens now appeal.

The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of Collagen on the basis that the MDA preempted the Greens' state tort law claims.

We review a trial court's grant of summary judgment under the following standard:

■ Summary judgment shall be entered:

... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 527 Pa. 132, [135], 589 A.2d 205, 206 (1991). Summary judgment may be entered only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989).

*Hayward v. Medical Center*, 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992). *See also Myszkowski v. Penn Stroud Hotel, Inc.*, 430 Pa.Super. 315, 320, 634 A.2d 622, 625 (1993). A trial court's grant of summary judgment will only be reversed for an error of law or a clear abuse of discretion. *Myszkowski*, at 320, 634 A.2d at 625.

Preliminarily, we note that neither our supreme court, nor this Court, nor the Third Circuit Court of Appeals, has addressed the issue of federal preemption of state tort law claims involving Class III medical devices which have received pre-market approval by the FDA. Recently, however, the United States District Court for the Eastern District of Pennsylvania addressed this issue, and held that the MDA wholly preempt a plaintiff's state tort law claims in cases involving Class III medical devices which have received pre-market approval. *Michael v. Shiley, Inc., et al.*, No. 93–1729, 1994 WL 59349 (E.D.Pa. February 25, 1994). "While decisions of the lower federal courts have a persuasive authority, they are not binding on Pennsylvania courts even where they concern federal questions." *Commonwealth v. Giffin*, 407 Pa.Super. 15, 26, 595 A.2d 101, 107 (1991), citing *Hangelias v. Dawson*, 158 Pa.Super. 370, 374, 45 A.2d 392, 394 (1946). However, because we find the reasoning of the district court in *Michael* to be persuasive, we find no error of law in the trial court's

grant of summary judgment on the basis of federal preemption.

■ Under the supremacy clause of the United States Constitution, federal law is "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a result, all conflicts between federal and state laws must be resolved in favor of federal law. *Buzzard v. Roadrunner Trucking, Inc.,* 966 F.2d 777 (3d Cir.1992). In determining whether a conflict between state and federal law exists, a court looks to congressional intent. *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), *appeal after remand,* 932 F.2d 959 (1991).

■ Generally, preemption may be express or implied, and it is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Id.* 498 U.S. at 56–57, 111 S.Ct. at 407, 112 L.Ed.2d at 363. "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted." *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407, 423 (1992) (holding that the Federal Cigarette Labeling and Advertising Act of 1965 and its amendment preempted some but not all of a lung cancer victim's state law tort claims). When Congress is silent on the matter, state law will be preempted by federal law "when (a) compliance with both state and federal law is impossible or, (b) when state law stands as an impediment to a federal purpose." *Hunsaker v. Surgidev Corp.,* 818 F.Supp. 744, 747 (M.D.Pa.1992).

Pursuant to the MDA, the FDA classifies all medical devices into one of three categories. 21 U.S.C. § 360c. Class I devices, such as tongue depressors, present little or no threat to public health and are thus subject to only general controls on manufacturing. 21 U.S.C. § 360c(a)(1)(A); *see also Stamps v. Collagen Corp.,* 984 F.2d 1416, 1418 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54

(1993). Class II devices, such as tampons and oxygen masks used in anesthesiology, pose more of a threat to public health and thus, are subject to more stringent controls. 21 U.S.C. § 360c(a)(1)(B); *Stamps,* 984 F.2d at 1418. Finally, Class III devices, such as Zyderm, are subject to the most extensive controls "to provide reasonable assurance of . . . safety and effectiveness." 21 U.S.C. § 360c(a)(1)(C); *Stamps,* 984 F.2d at 1419. Class III devices must obtain pre-market approval from the FDA because they "present a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C)(ii)(II).

Section 360e of the MDA sets forth the procedures for pre-market approval, and provides, in pertinent part:

§ 360e. Premarket approval

(a) General requirement

A class III device—

(1) which is subject to a regulation promulgated under subsection (b) of this section; or

(2) which is a class III device . . . is required to have . . . an approval under this section of an application for pre-market approval.

\* \* \* \* \* \*

(c) Application for premarket approval

(1) Any person may file with the Secretary an application for premarket approval for a class III device. Such an application for a device shall contain—

(A) full reports of all information, published or known to or which should reasonably be known to the applicant, concerning investigations which have been made to show whether or not such device is safe and effective;

(B) a full statement of the components, ingredients, and properties and of the principle or principles of operation, of such device;

(C) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device;

**(D)** an identifying reference to any performance standard under section 360d of this title which would be applicable to any aspect of such device if it were a class II device, and either adequate information to show that such aspect of such device fully meets such performance standard or adequate information to justify any deviation from such standard;

**(E)** such samples of such device and of components thereof as the Secretary may reasonably require, except that where the submission of such samples is impracticable or unduly burdensome, the requirement of this subparagraph may be met by the submission of complete information concerning the location of one or more such devices readily available for examination and testing;

**(F)** specimens of the labeling proposed to be used for such device; and

**(G)** such other information relevant to the subject matter of the application as the Secretary, with the concurrence of the appropriate panel under section 360c of this title, may require.

21 U.S.C. § 360e(c)(1)(A)–(G).

Thus, the extensive pre-market approval process requires a manufacturer to submit a detailed application to the FDA, including information pertaining to product specifications, intended use, manufacturing methods, and proposed labeling. An appointed panel of experts conducts a comprehensive review of the application and prepares a report and recommendation. 21 U.S.C. § 360e(c)(2). Within six months of receipt of the application, the FDA must either approve the device for sale, or reject it for additional information or testing. 21 U.S.C. § 360e(d). The MDA also impose extensive post-approval regulations to keep the FDA apprised of any new information or safety findings relating to Class III devices. 21 U.S.C. § 360e(e) and § 360i(a). The FDA may withdraw approval of the product permanently, or suspend its approval temporarily if it determines that the device has become unsafe or its labeling inadequate. 21 U.S.C. § 360e(e).

In enacting the MDA, Congress was not only interested in protecting the individual user, but it was also interested in encouraging research and development and allowing new and improved medical devices to be marketed without delay. *King v. Collagen Corp.,* 983 F.2d 1130, 1138 (1st Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). In the MDA, Congress included an express preemption provision, 21 U.S.C. § 360k, which provides in pertinent part:

**§ 360k. State and local requirements respecting devices**

**(a) General rule**

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any require-ment applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

FDA regulations instruct us that a state requirement within the meaning of section 360k(a) may arise from any require-ment established by a state including statutes, regulations, court decisions or ordinances. 21 C.F.R. § 808.1(b). State requirements which, in effect, establish new substantive re-quirements for a medical device in a regulated area, such as labeling, are preempted. 21 C.F.R. § 808.1(d)(6)(ii). Since Congress has provided an express preemption provision in the MDA, we must determine whether the Greens' state law tort claims fall within the scope of that provision by imposing requirements in addition to or different from those mandated by the FDA.

As previously stated, we find the reasoning of the United States District Court for the Eastern District of Pennsylvania in *Michael v. Shiley,* No. 93–1729, 1994 WL 59349 (E.D.Pa. February 25, 1994), to be persuasive. In deciding *Michael,* the district court found convincing the well-reasoned analyses

of the United States Court of Appeals for the First and Fifth Circuits, in *King v. Collagen Corp., supra,* and *Stamps v. Collagen Corp., supra,* respectively. These Courts of Appeal addressed the issue of whether section 360k of the MDA preempts state tort law claims involving Class III medical devices and both courts answered in the affirmative.

In *Michael,* the plaintiff, Nina Michael, underwent surgery to remove a Bjork–Shiley heart valve prosthesis that had been implanted ten years earlier. Although the prosthesis was functioning properly at the time of explantation, Michael claimed that the removal was necessary because of fear for her safety after hearing reports of incidents of alleged failure or malfunction of Shiley heart valves. Michael sued Shiley, Inc., Hospital Products Group, Inc., and Pfizer, Inc., in the Philadelphia Court of Common Pleas alleging negligence, intentional infliction of emotional distress, strict products liability, breach of express warranty, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, fraud, respondeat superior liability, alter ego liability, and civil conspiracy. Pursuant to 28 U.S.C. § 1446, on the basis of diversity of citizenship, the defendants removed the action to the local federal district court.

The defendants filed a motion for summary judgment on all of the above claims. In addition, on the basis of federal preemption pursuant to § 360k(a) of the MDA, the defendants filed a motion for partial summary judgment on Michael's claims of negligence, intentional infliction of emotional distress, strict products liability, breach of implied warranty of merchantability, and fraud. Guided by the analysis in *King, supra,* and *Stamps, supra,* the district court held that the MDA wholly preempt Michael's alleged state law tort claims involving a Class III medical device. *Michael, supra,* slip op. at 36. *See also Hunsaker v. Surgidev, supra,* 818 F.Supp. at 744 (a plaintiff's Pennsylvania tort claims involving intraocular lenses were preempted by the FDCA, the MDA, and the investigational device exemption from the safety and effectiveness requirements of the FDCA and the MDA, 21 C.F.R. §§ 813.1 and 813.5).

In *King v. Collagen Corp., supra,* the plaintiff, Jane King, contracted an auto-immune disease after receiving a test dose of Zyderm. King filed suit against Collagen, the manufacturer, alleging strict liability, breach of warranty of merchantability, negligence, failure to warn, product misbranding/mislabeling, fraudulent misrepresentation, and fraud in obtaining FDA approval. Collagen filed a motion for summary judgment on the basis that the MDA preempted King's claims. The United States District Court for the District of Massachusetts agreed and granted summary judgment.

The First Circuit Court of Appeals affirmed after finding that (1) the extensive pre-market approval process and the similarly extensive post-approval regulations were indications that the FDA had established specific "requirements" within the meaning of § 360k of the MDA and 21 C.F.R. § 808.1(d) of the FDA's regulations, and (2) King's state law tort claims would impose additional or different requirements than those mandated by the FDA, in contravention of § 360k. *King,* 983 F.2d at 1131–32. The court distinguished its result from that reached in *Cipollone v. Liggett Group, Inc., supra,* on the basis that the MDA imposed considerably more extensive regulation on Class III medical devices than the statute requiring cigarette manufacturers to include a brief health warning in their advertisements. *King,* 983 F.2d at 1135.

In *Stamps v. Collagen Corp., supra,* the Fifth Circuit Court of Appeals reached the same result as the First Circuit Court of Appeals in *King.* Jennifer Stamps alleged that she contracted an auto-immune disease after being injected with Zyderm and Zyplast. *Stamps,* 984 F.2d at 1419. Stamps filed suit in a Texas state court against the manufacturer, Collagen, alleging defective design, inadequate warnings and negligent failure to warn. *Id.* at 1418. Collagen removed the action to the local federal district court and filed a motion for summary judgment, which the district court granted on the basis that federal law preempted all of Stamps' state law claims. *Id.* Guided by the express language of § 360k(a), the Fifth Circuit Court of Appeals determined that Stamps' claims were preempted by federal law because first, the state tort

law claims would constitute requirements in addition to or different from the MDA, and, second, these requirements would relate to either the safety or effectiveness of Zyderm and Zyplast. *Id.* at 1422. "State tort causes of action—to the extent they relate to safety, effectiveness, or other MDA requirements—constitute requirements 'different from, or in addition to' the Class III process; they are, therefore, preempted." *Id.* at 1424 (footnote omitted).

In the present case, the Greens claim that the district court erred in granting summary judgment on the basis that the MDA preempted their state tort law claims. Here, we are constrained to agree with the rationale in *Michael, King,* and *Stamps,* and we conclude that a finding in favor of the Greens on any of their alleged state tort law claims would impose additional or different requirements on Collagen, whose product, Zyderm, has already received FDA approval. Such requirements are in conflict with the MDA and thus, the Greens' state law claims are therefore preempted.

In spite of the clear force of preemption in this case, the Greens raise six disparate arguments seeking to overcome federal preemption. We find none of the six arguments persuasive. First, the Greens claim that in the absence of specific MDA/FDA regulations or requirements applicable to Zyderm as a particular device, there is no preemption of state tort law claims. In support of this claim, the Greens cite to 43 Fed.Reg. 18,662 (May 2, 1978). Appellants' Brief at 8. In their brief, the Greens quote a portion of that regulation as follows: "[t]hus from a plain reading of [s]ection [360k] of the Act, it is clear that the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device or *class of devices....*" *Id.* (emphasis added). In this case, the FDA has classified Zyderm as a Class III medical device, which is subject to extensive regulation. Thus, the Greens' claim that there are no specific MDA/FDA regulations pertaining to Zyderm is without merit.

The Greens also maintain that a 1984 FDA advisory opinion letter construing the preemption provision supports their position and should be determinative. An "agency's interpretation

of its own statute is controlling so long as [it is] not contrary to Congress' intent." *King,* 983 F.2d at 1134, citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). One purpose of the preemption provision is to encourage manufacturers to engage in research and development of new and improved medical devices and to permit these devices to be marketed with little delay. *Id.* at 1138. Because of the potential chilling effect the FDA advisory opinion letter may have on future research and development, in contravention to Congress' intent, we view the FDA opinion letter as merely advisory and not dispositive.

■ The Greens also assert that in the absence of divergent state tort law requirements, there is no preemption of state law claims. The court in *Stamps* addressed this issue and rejected the conclusion that the absence of a direct conflict between state and federal regulations compels a finding of no preemption. *Stamps,* 984 F.2d at 1424. The court found support for this result in *Morales v. Trans World Airlines,* —— U.S. ——, ——, 112 S.Ct. 2031, 2038, 119 L.Ed.2d 157, 169 (1992), which rejected the contention that express preemption is inappropriate where state and federal law is consistent. *Id.* The *Morales* Court reasoned that such a strained reading of the preemptive provision would create an irrational loophole, and "there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute." *Id.* We read *Stamps* and *Morales* as rejecting the proposition that the absence of divergent state law compels a finding of no preemption.

■ Next, the Greens allege that their state tort law claims are exempt from preemption by express provisions of the MDA. The MDA have an express preemption provision for Pennsylvania which relates to hearing aids; nowhere in that provision are state tort law claims relating to Zyderm even mentioned. 21 C.F.R. § 808.88. State tort law claims involving FDA approved medical devices which are not expressly

exempt from preemption are preempted if they impose additional or different requirements.

■ The Greens also contend that their mislabeling, misbranding and adulterated product claims involve alleged violations of the MDA and are not preempted by the MDA. These claims relate directly to the labeling and packaging of Zyderm, which is regulated by the FDA. *See* 21 U.S.C. § 360e(c)(1)(F); *King,* 983 F.2d at 1136. Because a finding against Collagen would require Collagen to make changes in its FDA approved packaging, we conclude that these claims are preempted.

■ Finally, the Greens argue that because of the reasoning underlying the result in *Cipollone v. Liggett Group, Inc.,* *supra,* their claims for fraud, misrepresentation and breach of warranty are not preempted. For the following reasons, we disagree:

> [T]he warnings at issue in *Cipollone* were different than those here. In *Cipollone,* the statute required cigarette manufacturers to include a brief health warning in their advertisements; this warning did not affect cigarette advertisements in any other way. The manufacturers were free to make any claims they wished, including express warranties. Here, however, the MDA has imposed much more extensive regulation upon class III device manufacturers. The FDA retains rigid control over the entirety of the labeling and packaging of class III products, largely displacing the ability of manufacturers to make additional claims. This high level of control contrasts with the low level of control in *Cipollone,* and ensures that manufacturers will not be held liable for packaging and labeling imposed by the FDA.

*King,* 983 F.2d at 1135. Based on the foregoing, we conclude that the MDA preempt the Greens' claims for fraud, misrepresentation and breach of warranty.

Viewing all of the evidence in the light most favorable to the Greens, we are unable to conclude that the trial court committed any error of law in granting summary judgment in favor of

570

Collagen on the basis of federal preemption. Accordingly, we affirm the order entered on September 3, 1993.

Order affirmed.