**Bateman v. General Medical Corporation**

*Dawn L. Jennings,* for plaintiff.
*Karen Shichman Crawford,* for defendant, General Medical Corp..

TURGEON, *J.,* March 1, 1996—On May 6, 1993, plaintiff Nancy Bateman, who was employed as an operating nurse at Hershey Medical Center, was diagnosed as having occupationally-induced, contact urticaria with extracutaneous manifestations and allergic respiratory disease from her exposure to surgical latex gloves. As a result, she was forced to give up her career and is

now sensitized to all products containing latex. On April 5, 1995, Mrs. Bateman and her husband, who is claiming loss of consortium, initiated the present action against numerous parties including defendant Regent Hospital Products which was the distributor and manufacturer of the latex gloves which allegedly caused Mrs. Bateman's injuries. In their amended complaint, plaintiffs raise negligence and strict liability claims for the defective design, defective manufacture, failure to follow Food and Drug Administration recommendations and inadequate warning/labeling of the gloves. Additionally, it is alleged defendant breached express and implied warranties of merchantability and fitness for a particular purpose.

Defendant has since filed preliminary objections to the amended complaint in the nature of a demurrer arguing that all of plaintiffs' state claims are preempted by federal law; specifically, by the Medical Device Amendments of 1976, 21 U.S.C. §§360C-360k (Supp. 1995) to the Federal Food, Drug and Cosmetic Act of 1938, 21 U.S.C. §301 et seq.

"A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom. [A demurrer is properly sustained where the] complaint indicate[s] on its face that the [plaintiff's] claim cannot be sustained, and the law will not permit recovery." *Lobdell v. Leichtenberger,* 442 Pa. Super. 21, 24, 658 A.2d 399, 401 (1995). (citations omitted) If there is any doubt as to the propriety of a judgment in favor of a demurring party, it should not be entered. *Eby v. Milton Hershey Medical Center,* 21 D.&C.4th 281 (1993) (citing *Creeger Brick & Building Supply Inc. v. Mid-State Bank and Trust Co.,* 385 Pa. Super. 30, 33, 560 A.2d 151, 152 (1989)).

4

In light of two recently decided Superior Court opinions, defendant's demurrer will be sustained in part and overruled in part. *Burgstahler v. AcroMed Corporation,* 448 Pa. Super. 26, 670 A.2d 658 (1995) and *Rosci v. AcroMed Inc.,* 447 Pa. Super. 403, 669 A.2d 959 (1995).

The Medical Device Amendments were enacted:

"To assure the reasonable safety and effectiveness of medical devices intended for human use. . . . The MDA gives the FDA broad powers to classify and regulate medical devices. Under the MDA, the FDA must assign a medical device to one of three statutorily delineated categories. Class I devices are those devices which pose little or no threat to the public health. They are subject to only general requirements concerned with their manufacture. Tongue depressors are one example of a Class I medical device. . . . Class II devices include items such as tampons and oxygen masks. Use of Class II devices involves some risk of injury and, as a result, the FDA establishes performance standards, postmarket surveillance programs and guidelines for their use. . . . Class III devices are those devices which are implanted in the body or which pose a potentially unreasonable risk of injury. . . . They include Zyderm, as well as pacemakers, heart valves and replacement joints. Because of their inherent dangerousness, Class III devices are subject to the most stringent FDA regulation. All Class III devices are required to obtain premarket approval prior to being released for sale and use." *Burgstahler, supra* at 32, 670 A.2d at 661 (quoting *Kennedy v. Collagen Corporation,* 67 F.3d 1453, 1455 (9th Cir. 1995). (citations omitted))

In setting up the device classification procedure, the MDA grandfathered into the market all devices introduced before May 28, 1976, the effective date of the

Act, and permitted the sale of a device without requiring the manufacturer to obtain premarket approval where the device was the "substantial equivalent" of a device already on the market, including a device which was grandfathered into the market by virtue of having been first sold prior to the effective date of the Act. *Id.* at 33, 670 A.2d at 662 (citing 21 U.S.C. §360e(b)(1)(A) and (B) and 21 C.F.R. §807.87). In order for a device to be determined to be a "substantial equivalent," the manufacturer must submit a premarket notification, PMN, also known as a 510(k) notification, wherein the applicants must submit descriptions of their devices as well as their proposed labeling. *Id.* (citing 21 U.S.C. §§360(k), 360c(f)(1)). If the FDA determines the device is "substantially equivalent" to a previously marketed device, the applicant is free to market the device. *Id.*

The surgical gloves allegedly sold by defendant Regent have been classified by the FDA as a Class I device under the 510(k) premarket notification process. 21 C.F.R. §878.4460. As such, the gloves are subject to general FDA regulations.[1]

---

1. Those controls are set forth as follows:

"(A) Class I, general controls

"(i) A device for which the controls authorized under section 351 [adulteration], 352 [misbranding], 360 [registration], 360f [banned devices], 360h [notification], 360i [records and reports] or 360j [general provision] of this title or any combination of such sections are sufficient to provide reasonable assurance of the safety and effectiveness of the device.

"(ii) A device for which insufficient information exists to determine that the controls referred to in clause (i) are sufficient to provide reasonable assurance of the safety and effectiveness of the device or to establish special controls to provide such assurance, but because it—

The express preemption provision contained in the MDA is set forth at section 360k(a) and provides:

"(a) Except as provided in subsection (b) of this section, no state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement—

"(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

"(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. §360k(a).

The FDA has interpreted this preemption provision as applicable to any requirement established by a state including statutes, regulations, court decisions or ordinances. *Green v. Dolsky,* 433 Pa. Super. 556, 564, 641 A.2d 600, 604 (1994), *alloc. granted,* 539 Pa. 678, 652 A.2d 1324 (1994) (citing 21 C.F.R. §808.1(b)). Thus, a state law claim will be preempted if a ruling in favor of the plaintiff will create a requirement upon the defendant which would be "different from, or in addition to" the FDA requirements applicable to the device.

The issue of whether state claims alleging a defect in a medical device are preempted under the MDA has been addressed by the Pennsylvania Superior Court

---

"(I) is not purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, and

"(II) does not present a potential unreasonable risk of illness or injury, is to be regulated by the controls referred to in clause (i)." 21 U.S.C. §360c(a)(1)(A).

on three occasions: *Green v. Dolsky; Burgstahler v. AcroMed Corporation* and *Rosci v. AcroMed Inc., supra.*

In *Green,* which is currently on appeal to the Pennsylvania Supreme Court, the plaintiff had received Zyderm, a collagen implant classified as a Class III device, which leaked and caused the plaintiff to suffer from auto-immune disease. She brought numerous claims in state court against the manufacturer which in turn filed a motion for summary judgment raising preemption under the MDA. The trial court granted the motion and the Superior Court affirmed.

The Superior Court, relying upon a decision by the United States District Court for the Eastern District of Pennsylvania, held that "the MDA wholly preempt[s] a plaintiff's state tort law claims in cases involving Class III medical devices which have received pre-market approval." *Id.* at 560, 641 A.2d at 602 (citing *Michael v. Shiley Inc.,* no. 93-1729, 1994 WL 59349 (E.D. Pa. February 25, 1994)).[2] The court noted that the extensive premarket approval process and similar post-market approval regulations required by the FDA for Class III devices, provided indications that the FDA had established specific "requirements" upon those devices within the meaning of the preemption statute. As such, any successful state law claims would impose on Class III devices, requirements which were "different from, or in addition to" those imposed by federal law. *Id.* at 562-67, 641 A.2d at 603-605.

The plaintiff in *Green* had argued that since the FDA had promulgated no specific regulations or requirements applicable to Zyderm as a particular device, there was

---

2. The district court's decision in *Michael v. Shiley Inc.,* has since been affirmed in a published opinion by the Third Circuit Court of Appeals. 46 F.3d 1316 (3rd Cir. 1995).

no preemption. *Id.* at 567, 641 A.2d at 605. The court disagreed, noting that all Class III devices are extensively regulated. *Id.* at 569, 641 A.2d at 606.

The plaintiffs in the case at bar, like the plaintiff in *Green,* have argued that the MDA preemption statute does not apply to preempt state law claims subject only to general regulations and/or controls, such as the bone plates, and screws at issue here. The defendant, relying upon *Green* and to a greater extent upon the Third Circuit Court's reasoning in *Michael v. Shiley Inc.,* 46 F.3d 1316, 1336 (3rd Cir. 1995) argues that even general regulations must be considered "requirements" under the preemption statute.

In *Michael,* the plaintiff claimed she had been injured by a heart valve manufactured by Shiley, which was a Class III device. Shiley sought summary judgment under the MDA preemption statute and the district court granted the motion which was upheld by the Third Circuit Court on appeal. The plaintiff had argued that because the FDA had promulgated no regulations specific to the heart valve, preemption did not apply. In rejecting the plaintiff's argument, the court listed the requirements the heart valve was subject to under federal law and concluded:

"Even though these generally applicable regulations do not rise to the level of specificity present in the case of some other devices regulated by the FDA, we conclude that they present 'specific requirements applicable to a particular device under the act.' 21 C.F.R. §808.1(d). They therefore constitute proper bases for pre-emption under section 360k." *Id.* at 1336.

Defendant argues that under the rationale set forth in these cases, its demurrer must be sustained. However, we find that in light of the recent, simultaneously issued decisions by the Superior Court in *Burgstahler v.*

*AcroMed* and *Rosci v. AcroMed, supra,* the reasoning in *Green* and *Michael* does not extend beyond Class III devices.[3]

In *Burgstahler* and *Rosci,* the Superior Court addressed for the first time the preemption issue concerning Class II medical devices. In both cases, patients received implanted bone plates and screws which were allegedly defective. The plaintiff in *Burgstahler* brought state tort claims for negligence, strict liability and breach of implied warranty alleging defective design, and manufacture, failure to warn and inadequate labeling. The plaintiff in *Rosci* brought claims for breach of express and implied warranties. Acromed moved for summary judgment arguing all state claims were preempted under section 360k of the MDA. The trial court denied the motions in both cases on the preemption issue noting the lack of precedent on the issue regarding Class II devices, although the motion in *Rosci* was granted on other grounds.

On appeal, the court in *Burgstahler* reversed in part the denial of summary judgment. In reviewing the preemption issue, the court noted that the bone plates and screws had been designated as Class II devices via the 510k premarket notification process, wherein they had been deemed "substantially equivalent" to earlier marketed devices and were subject only to general controls regarding labeling, reporting and manufacturing. *Id.* at 33, 670 A.2d at 662 (citing 21 U.S.C. §360c(a)(1)(A) and (B)). The court noted that a finding of substantial equivalence was not the same as a finding by the FDA that the device was safe and effective and did not impose specific requirements on a device for

_____

3. These decisions were issued on December 19, 1995, after the parties had filed their briefs and after oral argument had taken place.

preemption purposes. *Id.* at 35, 670 A.2d at 663 (citations omitted) Finally, the court noted that with regard to the bone plates and screws, the FDA had issued no other regulations applicable to the devices except for a regulation identifying and classifying them as Class II devices. *Id.* The court then turned to the FDA's own interpretation of the MDA preemption statute which stated:

"State or local requirements are preempted only when the [FDA] has established specific counterpart regulations or there are other specific requirements applicable to . . . the device different from, or in addition to, the specific [FDA] requirements." *Id.* at 38, 670 A.2d at 664 (quoting 21 C.F.R. §808.1(d)).

In light of this regulation, the court held that preemption is not warranted for Class II medical devices which entered the market via the 510(k) process as the substantial equivalent of a grandfathered device, since there are no requirements, other than package labeling approval, imposed by federal law. *Id.* at 41, 670 A.2d at 666.

The court in *Burgstahler* thus found that all of the state claims brought by the plaintiff based upon manufacture and delivery of defective bone plates and screws or a claim based upon failure to inspect the devices were not preempted since success on such claims "will not impose 'requirement[s]' which are 'different from, or in addition to' any specific requirement imposed under federal law and will not 'relate [   ] to . . . any matter' included in a specific MDAs requirement." *Id.* at 40, 670 A.2d at 665 (quoting 21 U.S.C. §360k(a); 21 C.F.R. §808.1).

On the other hand, claims of failure to warn and inadequacy of labeling, whether brought under theories of strict liability, negligence and/or breach of the implied

warranty, were preempted, since the FDA specifically regulated labeling and packaging of the devices and a finding in a state court regarding inadequate warnings would establish a standard "in addition to" FDA labeling regulations. *Id.*.

In *Rosci,* the court, relying upon *Burgstahler,* held that all claims for breach of the implied warranty of merchantability and fitness for a particular purpose were preempted by the MDA, since a verdict in favor of plaintiff would result in the imposition of a requirement "in addition to" those imposed by the labeling require- ments of the MDA. *Id.* at 418-19, 669 A.2d at 966. On the other hand, claims for breach of express war- ranties were not preempted since:

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirements' im- posed by an express warranty claim are not 'imposed under state law,' but rather imposed *by the warrantor.* . . . In short, a common law remedy for a contractual commitment voluntarily undertaken should not be re- garded as a 'requirement . . . *imposed under state law'* . . . ." *Id.* at 421, 669 A.2d at 968 (quoting *Michael v. Shiley Inc.,* 46 F.3d at 1326, quoting *Cipollone v. Liggett Group Inc.,* 505 U.S. 504, 524-25, 112 S.Ct. 2608, 2622 (1992)). (emphasis in original)

We find that the holdings in *Burgstahler* and *Rosci* are applicable to this case. Although the devices involved there were classified Class II as contrasted with Class I as in the case at issue, both devices were approved for marketing via the 510(k) premarket notification proc- ess and were thus subject to the same general controls, including labeling requirements. Furthermore, no other specific regulations have been promulgated by the FDA, with the exception of one regulation which is unrelated

to any of the types of allegations raised by plaintiffs here.[4]

Accordingly, we hold that under *Burgstahler,* plaintiffs' claims raising negligence and strict liability for the defective design, defective manufacture and failure to properly inspect and test its surgical gloves are not preempted by the MDA since a verdict against defendant on any of these claims would not create a "requirement" upon the device "different from, or in addition to" those imposed by federal law.[5] In addition, plaintiffs' claim for breach of an express warranty is also not preempted under reasoning set forth in *Rosci, supra.*

However, plaintiffs' claims raising negligence and strict liability for inadequate warning/labeling of the gloves, are preempted under *Burgstahler* since the FDA specifically regulates labeling and packaging of the devices and a finding in a state court regarding inadequate warnings would establish a standard "in addition to" FDA labeling regulations.[6] Similarly, plaintiffs' claim for breach of the implied warranty of merchantability and fitness for a particular purpose is preempted under

---

4. Aside from the regulation classifying and identifying surgeon's gloves as a Class I device, the regulation promulgated by the FDA specific to surgeon's gloves deals with defining adulteration of the gloves with regard the number of leaks the gloves may have per sample group. 21 C.F.R. §800.20(a). This regulation was specifically designed to control the quality of the gloves as barrier devices in reducing the risk of blood-borne infectious diseases, namely HIV. This regulation is unrelated to the latex protein content of such gloves.

5. Allegations falling into this category are set forth in the amended complaint at paragraphs 47 (negligence) and 69 (strict liability), sub-paragraphs (a)-(g), (i)-(l) and (r).

6. Allegations falling into this category are set forth in the amended complaint at paragraphs 47 (negligence) and 69 (strict liability), sub-paragraphs (m)-(q).

*Rosci* since a verdict against defendant on this claim would create a "requirement" upon the device "in addition to" the labeling requirements imposed by the FDA upon surgical gloves.

Plaintiffs make one final allegation in their amended complaint which does not fall into any of the categories of claims addressed by the Superior Court in *Green, Burgstahler* or *Rosci* with regard to preemption. Plaintiffs claim that the defendant was negligent and/or is strictly liable to them for "failing to follow Federal Food and Drug Administration recommendations emphasizing the importance of the leaching process of natural rubber latex to insure that the allergy-causing proteins were removed." (Amended complaint ¶¶47(h) and 69(h).)

The defendant argues that the vast majority of courts which have addressed the issue have held that a plaintiff cannot raise state-law tort allegations which allege noncompliance with FDA regulations since there is no private right of action for violations of the MDA. See *Green v. Dolsky, supra* at 569, 641 A.2d at 606; *Michael v. Shiley Inc.* 46 F.3d at 1329 and *Talbott v. C.R. Bard Inc.,* 63 F.3d 25, 28 (1st Cir. 1995). Plaintiff replies that any allegation that a manufacturer or distributor failed to comply with FDA regulations would not constitute a requirement different from or in addition to those imposed by federal law. Instead, a plaintiff would be merely seeking to enforce compliance with FDA standards. However, we need not resolve this argument since the allegation in question here does not involve an allegation that the defendant failed to adhere to FDA *regulations.* Instead, the allegation is that the defendant failed to follow FDA *recommendations.* We are unaware of any case law which has addressed the effect preemption plays on an allegation of failure to adhere

to an FDA recommendation. In light of this doubt, defendant's demurrer must be overruled.

Accordingly, we enter the following:

## ORDER

And now, March 1, 1996, defendant Regent Hospital Products' preliminary objections are sustained in part; paragraph 47 (m) through (q), paragraph 69 (m) through (q) and paragraph 91, to the extent it alleges breach of an implied warranty, are hereby stricken from the amended complaint. All other objections are overruled.