676 A.2d 253

**Daniel CELLUCCI**

**v.**

**GENERAL MOTORS CORPORATION and Joseph V. DeFalco.**

Superior Court of Pennsylvania.

Argued Nov. 2, 1995.

Filed April 30, 1996.

David Heilbron, San Francisco, CA, for appellant.

Larry E. Coben, Scottsdale, AZ, for DeFalco, appellee.

Arthur H. Bryant, Philadelphia, for Trial Lawyers for Public Justice, amicus curiae.

Before ROWLEY, President Judge,* and CAVANAUGH, McEWEN, CIRILLO, DEL SOLE, BECK, TAMILIA, JOHNSON and HOFFMAN, JJ.

BECK, Judge.

█ The issue is whether the instant products liability action against appellant General Motors Corporation ("GM") is preempted by the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381 *et seq.* (the "Safety Act") and the pertinent Federal Motor Vehicle Safety Standards ("Safety Standards") and regulations promulgated thereunder. GM asks that we overrule our decisions in *Gingold v. Audi–NSU–Auto Union, A.G.*, 389 Pa.Super. 328, 567 A.2d 312 (1989) and *Heiple v. C.R. Motors, Inc.*, 446 Pa.Super. 310, 666 A.2d 1066

---

* President Judge Rowley joined the majority's opinion prior to his retirement from the court, but before the dissent was circulated. His vote; therefore, is not counted as a vote in favor of the majority.

(1995), and adopt the reasoning of the United States Court of Appeals for the Third Circuit in *Pokorny v. Ford Motor Co.,* 902 F.2d 1116 (3d Cir.1990), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).[1] We do so, and thereby reverse the trial court's denial of GM's motion for partial summary judgment.[2] *Cf. Muntz v. Commonwealth of Pennsylvania,* 674 A.2d 328 (1996) (air bag claim not preempted by federal law).

The relevant facts are not in dispute. Appellee Daniel Cellucci was injured when the 1986 Chevrolet Cavalier in which he was a passenger left the road and collided with a tree. The Cavalier was equipped with three-point lap and shoulder harness safety belts, and a dashboard light and buzzer designed to promote seat belt use. Cellucci maintains that he was wearing his seat belt at the time of the accident, but that he nevertheless sustained severe injuries, including permanent brain damage. Cellucci brought this action asserting, *inter alia,* that GM's vehicle was defectively designed because it lacked passive restraints, specifically, air bags. GM filed a motion for partial summary judgment claiming that

1. We recognize that we are not bound by the decisions of federal intermediate appellate court panels. *Cianfrani v. Johns–Manville Corp.,* 334 Pa.Super. 1, 482 A.2d 1049, 1051 (1984); *Breckline v. Metropolitan Life Ins. Co.,* 406 Pa. 573, 178 A.2d 748 (1962). Nonetheless, where the Third Circuit has spoken on a federal issue, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate that we follow the Third Circuit decision. *Nobers v. Crucible, Inc.,* 431 Pa.Super. 398, 636 A.2d 1146 (1994). *See also Com. v. Negri,* 419 Pa. 117, 122, 213 A.2d 670 (1965) (Third Circuit's decision on federal question should be followed in Pennsylvania so that individuals do not improperly "walk across the street" to gain a different result); *Murtagh v. County of Berks,* 535 Pa. 50, 634 A.2d 179 (1993) (same). Because the *Pokorny* case involves the identical question raised here, we find its holding to be particularly compelling.

2. An appeal from the denial of summary judgment ordinarily is interlocutory and not appealable. However in this case, the trial court included in its order denying summary judgment a statement that the order involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. The case was thereby certified for interlocutory appeal by permission in accordance with Pa.R.App.P. 1311 and 42 Pa.C.S. § 702(b). This court granted GM's Petition for Permission to Appeal on May 19, 1994.

federal law impliedly preempts claims that an automobile is defective because it lacks air bags. The trial judge, although expressing his opinion that Cellucci's action is in fact preempted by federal law, stated that he was bound by this court's decision in *Gingold, supra,* and therefore denied GM's motion.

■ In this appeal from the decision on a summary judgment motion, our review is plenary; summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Pa.R.Civ.P. 1035(b). Because the preemption issue raises a question of law in this setting of undisputed facts, the issue was ripe for summary judgment. *See Pokorny, supra* at 1119. In their briefs to this court, GM and amicus [3] argue that Cellucci's common law action is impliedly preempted by the Safety Act. On the other hand, Cellucci and amici [4] argue that his action remains viable despite the existence of the Safety Standards and the Safety Act.

We first provide an overview of the relevant statutory context. The purpose of the Safety Act was "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381. Undoubtedly, a secondary goal was to promote nationwide uniformity among automobile safety standards. *Pokorny, supra* at 1122. By 1986, Safety Standard 208 had been promulgated pursuant to the Safety Act and provided automobile manufacturers with three options for occupant restraint systems: 1) a complete passive restraint system for front and lateral crashes; 2) passive restraints for frontal crashes plus lap belts, shoulder harnesses and a warning system; or 3) a three-point manual seat belt with a warning system. *Gingold, supra* at 336–38, 567 A.2d at 317 (citing 49 C.F.R. §§ 571.208 § 4.1.2.1, § 4.1.2.2, and § 4.1.2.3). Although a phase-in requirement for passive restraints (such as airbags) was instituted by Safety Standard

3. Filing a brief on behalf of GM as amicus curiae was Product Liability Advisory Council, Inc.

4. Filing amicus briefs on behalf of Cellucci were Trial Lawyers for Public Justice, Public Citizen, Center for Auto Safety, Motor Voters, and the Pennsylvania Trial Lawyers.

208, it was not to begin until 1987. Thus, GM was in compliance with Safety Standard 208 when it chose the third option, 3–point manual seat belts with a warning system, as installed in the 1986 Cavalier.

In addition, the Safety Act included the following language which we will refer to as the "preemption clause":

### § 1392. Motor vehicle safety standards.

(d) *Supremacy of federal standards;* allowable higher standards for vehicles used by Federal or state governments

*Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect,* with respect to any motor vehicle or item of motor vehicle equipment *any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.* Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard.

15 U.S.C. § 1392(d) (emphasis added).[5]

The Safety Act also includes a "savings clause" in section 1397(k):

---

**5.** The Safety Act recently was recodified so all "laws related to transportation [appear] in one comprehensive title," and was moved from Title 15 to Title 49 of the United States Code. H. Rep. No. 103–108, 103rd Cong., 2d Sess. 3 (1994), reprinted in 1994 U.S.C.C.A.N. 818, 820. There were some "technical improvements" to the language to promote "clarity" and "consistency," and avoid "surplusage"; precautions were taken against "making substantive changes in the law." *Id.* The substance of Section 1392(d) now appears as 49 U.S.C. § 30103(b):

(b) Preemption.—

**(k) Continuation of common law liability**

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C. § 1397(k).[6] It is this section to which Cellucci and other opponents of preemption point for support of their argument that "no airbag" claims present valid common law causes of action.

We provide an overview of the relevant decisions courts in this Commonwealth have made on this issue. In *Gingold v. Audi–NSU–Auto Union, AG,* 389 Pa.Super. 328, 567 A.2d 312 (1989), the plaintiff claimed that the defendant's 1983 Audi was defective because, *inter alia,* it lacked air bags. The trial court granted a partial summary judgment on the ground that the "no air bag" claim was preempted by the Safety Act. *Id.* at 330–32, 567 A.2d at 314. A panel of this court reversed, holding that the savings clause preserved the common law action against Audi for failure to install air bags. *Id.* at 333–34, 567 A.2d at 315. The court reasoned that unless the savings clause was interpreted as an "anti-preemption" clause, it would serve no purpose in the Act. *Id.* at 356–58, 567 A.2d at 327. In making its decision, the court conceded that it was

(1) When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter. However, the United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard of this chapter.

(2) A state may enforce a standard that is identical to a standard prescribed under this chapter.

49 U.S.C. § 301003(b). The preemption case law we discuss refers to the Safety Act's provisions as previously codified in Title 15 and we continue to do so here in order to avoid confusion.

6. Section 1397(k) also was recodified at 49 U.S.C. § 30103(e) as follows:

(e) Common law liability.—Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

joining "the ranks of the minority." *Id.* at 334, 567 A.2d at 315.

In 1990, the United States Court of Appeals for the Third Circuit decided *Pokorny v. Ford, supra.* Pokorny sued on behalf of her decedent John Duffy, who died when the 1981 Ford van in which he was a passenger crashed. The lawsuit included claims that the Ford was defective because it lacked air bags and window netting that would have prevented Duffy from being partially ejected from a window. 902 F.2d at 1118. Basing its decision primarily on the savings clause, the Third Circuit held that the Safety Act did not expressly preempt the air bag claim. *Id.* at 1121. However, the court reasoned that there was an actual conflict between the federal Safety Standards providing options to automobile manufacturers and the potential damages awards of common law actions essentially based on the manufacturers' compliance with the federal regulatory framework. The court concluded that the Safety Act therefore impliedly preempted Pokorny's air bag claims. *Id.* at 1125. The court did allow the window netting claim to proceed as there were no applicable federal Safety Standards regarding window netting, and therefore no conflict. *Id.* at 1126. The United States Supreme Court denied certiorari on the case. 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

Most recently, our court was faced with a "no air bag" claim in *Heiple v. C.R. Motors, Inc.,* 446 Pa.Super. 310, 666 A.2d 1066 (1995), and the panel again decided that the common law action was not preempted by the Safety Act. The plaintiff was injured when he was involved in a motor vehicle accident while operating his 1986 Chevrolet Celebrity. In his lawsuit the plaintiff claimed, *inter alia,* that the car was defective because General Motors had failed to install an air bag. After considering whether the action was expressly preempted by the Act, the court decided that the language of the preemption clause, § 1392(d), was too narrow and specific to include common law tort actions within its purview. The court was persuaded that the savings clause at § 1397(k) preserved all common law actions such as the plaintiff's. The court reasoned that the savings clause expressly precluded a finding of federal pre-

emption. On this issue, the court rejected the reasoning of the Third Circuit in *Pokorny*. In addition, the court rejected an implied preemption analysis.

Speaking generally on the subject of preemption, the United States Supreme Court stated in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992):

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art VI, cl. 2. Thus, since our decision in *McCullough v. Maryland,* 4 Wheat. 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114 [2128–29], 68 L.Ed.2d 576 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146 [1152], 91 L.Ed. 1447 (1947). Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of preemption analysis. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185 [1190], 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219 [223], 11 L.Ed.2d 179 (1963)).

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305 [1309], 51 L.Ed.2d 604 (1977). In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, *see Pacific Gas & Elec. Co. v. [State] Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713 [1722], 75 L.Ed.2d 752 (1983), or if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Fidelity Federal Savings & Loan Assn. v.*

*de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014 [3022], 73 L.Ed.2d 664 (1982) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. at 230, 67 S.Ct. 1146 [1152], 91 L.Ed. 1447). *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617.

■ Thus, federal preemption of state law can occur in three types of situations: where Congress expressly preempts state law, where preemption is implied because Congress has occupied an entire field, and where preemption is implied because there is an actual conflict between federal and state law. *Pokorny, supra* at 1120 (citing *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988)). We first consider whether the "no air bag" claim asserted by Cellucci was expressly preempted by the Safety Act and the standards promulgated thereunder.

The Safety Act's preemption clause explicitly states that when a federal Safety Standard is in effect, "no State shall have any authority either to establish, or to continue in effect any safety standard applicable to the same aspect of performance ... which is not identical to the Federal standard." 15 U.S.C. § 1392(d). In this case, the Safety Standard applicable to occupant restraint systems provided a choice between three options; air bags were *not required.*[7] Were Pennsylvania to pass legislation requiring air bags in all vehicles sold here,

---

7. In 1974, during the course of a failed attempt to enact certain additional requirements, including an ignition interlock system designed not to allow the operator to start the engine without first putting on seat belts, which provoked great public opposition, Congress enacted the following measure:

(1) No Federal motor vehicle safety standard may—
   (A) have the effect of requiring, or
   (B) provide that a manufacturer is permitted to comply with such standard by means of any continuous buzzer designed to indicate that safety belts are not in use, or any safety belt interlock system.
(2) Except as otherwise provided in paragraph (3), no Federal motor vehicle safety standard respecting occupant restraint systems may—
   (A) have the effect of requiring, or
   (B) provide that the manufacturer is permitted to comply with such standard by means of an occupant restraint system other than a belt system ...

15 U.S.C. § 1410(b). Such additional requirements could be enacted only after the measures had been submitted to both houses of Congress and not disapproved by them. § 1410(b)(3).

such a requirement would be a "safety standard ... which is not identical to the Federal standard," and surely would be expressly preempted by § 1392(d). We are persuaded, however, that tort actions at common law likewise seek to impose standards upon and enforce the duty of defendants to comply with certain standards of conduct. *See Green v. Dolsky*, 433 Pa.Super. 556, 641 A.2d 600 (1994) (plaintiff's lawsuit against drug manufacturer was preempted by Medical Device Amendments to Federal Food, Drug and Cosmetic Act which expressly prohibits states from establishing or continuing in effect "requirements" different from those in the federal Act), *alloc. granted*, 539 Pa. 678, 652 A.2d 1324 (1994). *See also Burgstahler v. AcroMed Corp.*, 448 Pa.Super. 26, 670 A.2d 658 (1995) (federal MDAs preempt state common law actions based on inadequate labeling or failure to warn because these are governed by the Act, but other actions are not preempted); *Rosci v. Acromed, Inc.*, 447 Pa.Super. 403, 669 A.2d 959 (1995) (same).

An award of damages in a common law action can have the same regulatory effect as an affirmative legislative enactment. " '[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' " *Cipollone*, 505 U.S. at 521, 112 S.Ct. at 2620 (quoting from *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). An award of damages in a "no air bag" case, designed to create and enforce a manufacturer's duty to install air bags in its automobiles thus would be a "safety standard" that is not identical to the federal standard, in violation of § 1392(d).

In *Cipollone*, for example, the United States Supreme Court held certain common law actions—those asserting that the defendant cigarette manufacturers had failed to adequately warn smokers about the health consequences of smoking—to be preempted by language in the federal Public Health Cigarette Smoking Act of 1969 (the "Smoking Act"):

> No *requirement or prohibition* based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334(b) (§ 5(b)). The terms "requirement or prohibition" in the Smoking Act were held to include common law actions for damages, and therefore to expressly preempt them. In this case, the Safety Act's preemption clause prohibits states from establishing or continuing in effect "safety standards" that are not identical to federal standards. 15 U.S.C. § 1392(d). If this clause stood alone, given our analysis of the term "standards," we would not hesitate to conclude that the instant "no air bag" claim is expressly preempted.

■ However, because we must read the preemption clause at § 1397(d) together with the "savings clause" at § 1397(k), we find an ambiguity and thus ultimately decline to hold that Cellucci's action is *expressly preempted. See Pokorny, supra* at 1121. *Cf. Estate of Montag v. Honda Motor Co.*, 856 F.Supp. 574 (D.Colo.1994) (air bag claims are expressly preempted by Safety Act), *aff'd*, 75 F.3d 1414 (10th Cir.1996); *Dykema v. Volkswagenwerk AG*, 189 Wis.2d 206, 525 N.W.2d 754 (1994), *cert. den.*, —— U.S. ——, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995) (claim for failure to install lap belt explicitly preempted by Safety Act).

> Many more courts, however, have found passive restraint claims *not* expressly preempted, because the preemption clause does not explicitly mention common law, and because the savings clause, when considered in combination with the preemption clause, makes ambiguous Congress's intent with respect to preemption of state common law claims ... This court is persuaded that the Safety Act, when considered in its entirety, does not express an unambiguous congressional intent to preempt state common law passive restraint claims. By the same token, it does not unambiguously express an intent to preserve such claims....

*Heath v. General Motors Corp.*, 756 F.Supp. 1144, 1147 (S.D.Ind.1991) (emphasis in original) (citations omitted).

■ Closer inspection reveals that the "no air bag" claims are impliedly preempted by the Safety Act. Allowing common law claims based on the failure to install air bags to proceed, in the face of specific federal safety standards that permit automobile manufacturers not to install them, would create an actual conflict between the federal and state law such that the state law is impliedly preempted. *See Schneidewind, supra.*[8]

Once again, we are persuaded by the Third Circuit's reasoning in *Pokorny:*

> Allowing Pokorny to assert that the Ford van was defectively designed because it did not contain air bags or automatic seat belts frustrates the goals of the federal regulatory framework and undermines the flexibility that Congress and the Department of Transportation intended to give to automobile manufacturers in this area. Because potential common law liability interferes with the regulatory methods chosen by the federal government to achieve the Safety Act's stated goals, we think Pokorny's action is preempted to the extent that she alleges that the Ford van was defectively designed because it lacked air bags or automatic seat belts....

902 F.2d at 1123. In essence, because Cellucci's theory of recovery on the "no air bag" claim effectively would remove the element of choice explicitly provided in Safety Standard 208, his action is preempted by the federal regulatory framework. The vast majority of courts that have considered such claims have reached this same conclusion in their reported opinions. *Pokorny, supra; Kitts v. General Motors Corp.*, 875

---

8. As previously noted, federal preemption may also be implied through the legislative occupation of an entire field, or "field preemption." *Schneidewind, supra.* Because we decide that the common law claim at issue here is impliedly preempted based upon an actual conflict, under "conflict preemption," we need not address the question of whether Congress intended with the Safety Act to occupy the entire field of motor vehicle safety. As is discussed *infra,* however, the Safety Act should not be interpreted so broadly, especially in light of the many types of equipment not covered by the relevant standards. At least one purpose of the savings clause was to preserve common law actions in areas that had not been the subject of Safety Standards, in contrast to air bags. *See infra* at 450–454; *Pokorny, supra* at 1122.

F.2d 787 (10th Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Wood v. General Motors Corp.,* 865 F.2d 395 (1st Cir.1988), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); *Tammen v. General Motors Corp.,* 857 F.Supp. 788 (D.Kan.1994); *Heath v. General Motors Corp., supra; Kelly v. General Motors Corp.,* 705 F.Supp. 303 (W.D.La.1988); *Surles v. Ford Motor Co.,* 709 F.Supp. 732 (N.D.Tex.1988); *Schick v. Chrysler Corp.,* 675 F.Supp. 1183 (D.S.D.1987); *Staggs v. Chrysler Corp.,* 678 F.Supp. 270 (N.D.Ga.1987); *Wattelet v. Toyota Motor Corp.,* 676 F.Supp. 1039 (D.Mont.1987); *Panarites v. Williams,* 216 A.D.2d 874, 629 N.Y.S.2d 359 (1995); *Boyle v. Chrysler Corp.,* 177 Wis.2d 207, 501 N.W.2d 865 (App.1993); *Nissan Motor Corp. v. Superior Court,* 212 Cal.App.3d 980, 261 Cal.Rptr. 80 (1989), *cert. denied, Meier v. Nissan Motor Corp.,* 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990); *Wickstrom v. Maplewood Toyota, Inc.,* 416 N.W.2d 838 (Minn.App.1987), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2905, 101 L.Ed.2d 937 (1988).

Nor does the existence of a savings clause change our determination on this issue. *Cf. Tebbetts v. Ford Motor Co.,* 140 N.H. 203, 665 A.2d 345 (1995) (savings clause preserves common law actions in no air bag claims), *cert. denied, Ford Motor Co. v. Tebbetts,* —— U.S. ——, 116 S.Ct. 773, 133 L.Ed.2d 726 (1996); *Wilson v. Pleasant,* 660 N.E.2d 327 (Ind.1995) (same). As broad as the language in § 1397(k) is, it cannot properly be read to preserve common law actions such as Cellucci's that would effectively subvert a federal statutory or regulatory scheme. Like the court in *Pokorny,* we believe the better approach is to construe the savings clause to permit only those lawsuits that do not conflict with or undermine the federal scheme. *Pokorny,* 902 F.2d at 1125 n. 10. It is only in such cases that the savings clause precludes preemption; otherwise, the savings clause would tear down the "barriers against inconsistent state regulation that the preemption clause was written to erect." *Miranda v. Fridman,* 276 N.J.Super. 20, 647 A.2d 167 (1994) (common law action claiming defect for failure to install lap belts preempted).

For example, the savings clause actually "saves" design defect claims arising out of an automobile manufacturer's failure to install safety equipment not covered by the federal Safety Standards; in such cases, there is no conflict between state and federal law. *See Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (claim regarding failure to install antilock brakes in tractor-trailers not preempted); *Pokorny, supra* (claim regarding failure to install window netting not preempted); *Buzzard v. Roadrunner Trucking, Inc.,* 966 F.2d 777 (3d Cir.1992) (claim regarding additional truck illumination equipment not preempted); *Swope v. STI Transit Co.,* 796 F.Supp. 160 (E.D.Pa.1992) (claim regarding failure to place reflective tape on trailer not preempted). The savings clause acts to prevent manufacturers from relying on their alleged compliance with federal standards as an affirmative defense to such lawsuits.

In addition, the savings clause preserves actions arising out of the defective design or installation of systems mandated by the federal Safety Standards. *See Perry v. Mercedes Benz of North America, Inc.,* 957 F.2d 1257 (5th Cir.1992) (claim of defectively designed air bag system not preempted by Safety Act); *Hyundai Motor Co. v. Phillip,* 639 So.2d 1064 (Fla.Dist. Ct.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995) (claim of defectively designed automatic belt system not preempted). *See also Johnson v. General Motors Corp.,* 889 F.Supp. 451 (W.D.Okl.1995) (savings clause preserves actions relating to standards of care in exercise of options in federal Safety Standards). Contrary to appellees' argument and the court's statements in *Gingold,* the savings clause is not made ineffectual under our analysis, but rather serves the purpose of demonstrating that Congress did not intend to occupy the entire field of automobile safety.

We are not persuaded by appellee's argument that the United States Supreme Court in *Cipollone* rejected the implied preemption analysis we employ. In considering the preemptive scope of the Smoking Act, the Supreme Court stated that its analysis was governed by the express language of the preemption clause in § 5 of the Act:

When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority, ... there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation ... Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted....

*Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2618 (footnotes omitted). Nevertheless, the *Cipollone* Court held the challenged failure to warn action was expressly preempted by the Smoking Act's preemption clause, and therefore implied preemption analysis never became an issue.[9] Moreover, in this case, the apparent ambiguity between the Safety Act's preemption and savings clauses indicates that Congress did not provide a "reliable indicium" of its intent on this issue, and therefore implied preemption remains a necessary component of the analysis. *Pokorny, supra.* This is particularly true where, as here, a common law action seeking damages for the failure to install air bags certainly would undermine the federal regulatory scheme that affirmatively establishes a range of permissible options for automobile manufacturers.

In any event, the Supreme Court itself has recently clarified its statements in *Cipollone:*

The fact that an express definition of the pre-emptive reach of a statute "implies"—*i.e.* supports a reasonable inference—that Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied pre-emption ... Our subsequent decisions have not read *Cipollone* to obviate the need for analysis of an individual statute's pre-emptive effects ... At best, *Cipollone* supports an inference that an express pre-emption analysis forecloses implied pre-emption; it does not establish a rule.

9. The Court declined to find preemption of the plaintiff's other causes of action, including breach of warranty, fraudulent misrepresentation, and conspiracy to conceal material facts. *Cipollone, supra.*

*Freightliner Corp. v. Myrick,* —— U.S. at ——, 115 S.Ct. at 1488, 131 L.Ed.2d at 393 (citations omitted). It is clear that the Supreme Court has not abandoned implied preemption analysis since *Cipollone.*[10]

Implied preemption analysis clearly remains a viable tool for reaching our ultimate conclusion, and its application compels our· holding that Cellucci's common law action for failure to install air bags is preempted by federal law. With this decision, we overrule our earlier decisions in *Gingold* and *Heiple.*

Reversed and remanded for entry of summary judgment on appellee's air bag claim. Jurisdiction relinquished.

CAVANAUGH, CIRILLO, TAMILIA and HOFFMAN, JJ., join this opinion.

CIRILLO, J., files a concurring opinion in which CAVANAUGH and HOFFMAN, JJ., join.

DEL SOLE, J., files a dissenting opinion in which McEWEN and JOHNSON, JJ., join.

Before ROWLEY, President Judge, and CAVANAUGH, McEWEN, CIRILLO, DEL SOLE, BECK, TAMILIA, JOHNSON, and HOFFMAN, JJ.

CIRILLO, Judge, concurring.

I join in the majority's opinion today overruling this court's decisions in *Gingold* and *Heiple,* adopting the Third Circuit Court's decision in *Pokorny,* and concluding that Cellucci's action against GM is impliedly preempted by the National Traffic and Motor Vehicle Safety Act of 1966. I write separately, however, to offer additional insight into the ramifica-

---

**10.** We note the Supreme Court's recent action in vacating the decision in *Hernandez–Gomez v. Leonardo,* 180 Ariz. 297, 884 P.2d 183 (1994). There, the Arizona Supreme Court had refused to engage in an implied preemption analysis in a common law action for failure to install lap belts, holding that *Cipollone* precluded it. The United States Supreme Court granted certiorari, vacated the decision, and remanded the case "for further consideration in light of" *Myrick, supra. Volkswagen of America, Inc. v. Hernandez–Gomez,* —— U.S. ——, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995).

tions of appellee's suggestion that there exists a product liability cause of action against General Motors based on the theory of defective design.

Cellucci, a passenger in a 1986 Chevrolet Cavalier equipped with three-point lap and shoulder harness safety belts, was injured when the car struck a tree. In his action against GM, Cellucci averred that the Cavalier was defectively designed because it lacked air bags. There is no dispute here that GM was in compliance with the federal safety standards; the phase-in requirement for air bags was not to begin until the 1987 model year. Cellucci argues, nonetheless, that the car was defectively designed because it did not come equipped with air bags.

The doctrine of preemption springs from the simple mandate that the "Constitution, and the Laws of the United States . . . shall be the Supreme Law of the Land. . . ." U.S. Const. art. VI, cl. 2. Chief Justice Marshall first stated the doctrine in *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824):

The nullity of any act, inconsistent with the Constitution, is produced by the declaration, that the Constitution is the supreme law. The appropriate application of that part of the clause which confers the same supremacy on laws and treaties, is to such acts of the state legislatures as do not transcend their powers, but though enacted in the execution of acknowledged state powers, interfere with, or are contrary to, the laws of Congress, in pursuance of the Constitution, or some treaty made under the authority of the United States. In every case, the act of Congress, or the treaty, is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it.

22 U.S. (9 Wheat.) at 210–11. A state action that "frustrate[s] the accomplishment and execution of the full purposes and objectives of Congress" may provide a basis for implied preemption, despite the absence of express preemption. *Freightliner Corp. v. Myrick*, —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

Here, as the majority correctly notes, allowing a common law claim "in the face of specific federal safety standards would create an actual conflict between the federal and state law such that the state law is impliedly preempted." Majority Opinion at p. 450. In 1986, manufacturers could choose from three safety options; air bags were not required. A state mandate would eliminate the element of choice which is clearly set forth in the federal Safety Standard 208. *See* 49 C.F.R. § 571.208 § 4.1.2.1, § 4.1.2.2, and § 4.1.2.3. *See also Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1124–25 (3d Cir.1990), *cert. denied* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990) (a common law rule cannot prohibit the exercise of a federally granted option). *Cf. Wilson v. Pleasant,* 660 N.E.2d 327 (Ind.1995) (applying traditional implied conflict preemption analysis, court found common law action in negligence for failure to install an airbag was not preempted by the Federal National Traffic and Motor Vehicle Safety Act of 1966).

In addition to offending preemption principles, allowing a common law action against General Motors creates the anomalous circumstance of punishing a manufacturer for complying with the federal safety standards. *See Taylor v. General Motors Corporation,* 875 F.2d 816, 827 (11th Cir.1989) (quoting *Chicago & N.W. Trans. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318, 101 S.Ct. 1124, 1130–31, 67 L.Ed.2d 258 (1981)). *See also Pokorny, supra.* Further, it lays the foundation for a patchwork of differing standards throughout the country, and frustrates the uniformity Congress sought in enacting the federal safety law. *Compare Wood v. General Motors Corp.,* 865 F.2d 395, 412 (1st Cir.1988), *cert. denied* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990)(finding Congress' chosen method of increasing automobile safety was to establish uniform national safety standards) *with Pokorny, supra* (suggesting uniformity was not a primary goal of Congress in enacting the Safety Act).

Cellucci's argument that the availability of the air bags placed upon GM the duty to incorporate them into the design of its car, regardless of the federal safety standards, discounts the consumer's ability to "design" his or her car to meet a

certain safety level beyond that required under federal law. In today's market, the consumer is, in the sense of safety options, a designer. The consumer who wishes protection beyond that required by federal law can obtain that protection for a cost. Other safety options, such as side air bags, roll bars, steel cages, even bullet proof windows, are available and can be incorporated if the consumer is willing to pay a higher price.

Mere availability, however, is insufficient to create a cause of action in products liability. This defies the purpose and theory of product liability law, and reaches instead toward a theory of absolute liability. *See Davis v. Berwind Corporation*, 433 Pa.Super. 342, 352–54, 640 A.2d 1289, 1295 (1994), *citing Azzarello v. Black Bros. Co.*, 480 Pa. 547, 551–55, 391 A.2d 1020, 1023 (1978); *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa.Super. 220, 225, 545 A.2d 906, 909 (1988); *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 61, 485 A.2d 408, 429 (1984). When the National Highway Transportation Safety Administration[1] determines that a safety feature is required, only then can we reasonably conclude that its exclusion supports a product liability action based on defective design.

Before ROWLEY, President Judge[1], CAVANAUGH, McEWEN, CIRILLO, DEL SOLE, BECK, TAMILIA, JOHNSON and HOFFMAN, JJ.

DEL SOLE, Judge, dissenting.

Today the Majority, by its decision to shield automakers from our state's liability laws, has taken the unenlightened approach, refusing to recognize the current trend, sanctioned by no less than the United States Supreme Court, which would allow plaintiff's claim to proceed.

The question presented to the court is whether under the terms of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381 *et. seq.* (the "Safety Act"), a common

---

1. *See* 15 U.S.C. § 1381 *et seq.* and 49 U.S.C. § 105. *See also* 49 C.F.R. Part 571.

1. President Judge Rowley did not participate in the consideration or decision of this case.

law cause of action against an auto manufacturer may be based upon the failure to install an airbag in a vehicle built before such safety equipment became federally mandated. A resolution of this issue is grounded on the language of the Act which must be examined to determine whether Congress has exercised its power to preempt state law. Such a determination can be made only by ascertaining "the intent of Congress." *California Federal Savings and Loan Association v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). It has been stated:

> Congress is empowered to preempt state law by the Supremacy Clause, Art. VI, cl.2, of the United States Constitution.... Thus, preemption 'is compelled [when] Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'

*Gingold v. Audi–NSU–Auto Union, A.G.*, 389 Pa.Super. 328, 338, 567 A.2d 312, 318 (1989). (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).

Two provisions of the Act are relevant to ascertain Congressional intent on this subject. They provide:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item· of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard....

15 U.S.C. § 1392(d).

Also included is a provision referred to as a "savings clause."

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C. § 1397(k).

The Majority, in reading these clauses together, found that Congress did not expressly preempt the "no air bag" claim

made in this case. Majority slip opinion at 259. I agree with this conclusion. There is nothing expressly written in this statute which would evidence an unambiguous congressional intent to preempt state claims of this nature. Such clear language would be necessary to overcome the presumption which exists against preemption. *Silkwood v. Kerr–McGee Corporation,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). It has been stated:

'Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States (are) not to be superseded by . . . Federal Act unless that (is) the clear and manifest purpose of Congress.' *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

*Cipollone v. Liggett Group Inc.,* 505 U.S. 504, 515–16, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).

Courts must tread cautiously in this arena because the authority to displace a sovereign state's law is 'an extraordinary power . . . that we must assume Congress does not exercise lightly.' *Gregory v. Ashcroft,* 501 U.S. 452, 460, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1991).

*Mazaika v. Bank One, Columbus, N.A.* 439 Pa.Super. 95, 653 A.2d 640, 644 (1994), (quoting *Gregory v. Ashcroft,* 501 U.S. 452, 460, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1991).

Thus, I do not hesitate to agree with the Majority's conclusion that Congress has not, by the terms set forth in the Act, expressly preempted the type of claim made by plaintiff in this case. However, unlike the Majority, I do not conclude that the language of the Act is "ambiguous" making it necessary to determine whether Congress has by implication preempted this type of claim. In my view, a view which follows the lead of the United States Supreme Court in its recent action with respect to a New Hampshire case, the question of implied preemption cannot be reached because Congress has *clearly* and *expressly* preserved all common law claims.

The Supreme Court of New Hampshire in the case of *Tebbetts v. Ford Motor Company,* 140 N.H. 203, 665 A.2d 345

(1995) was also asked to consider whether to grant summary judgment to defendant-automaker and rule that the plaintiff's claim of defective design for failure to install an airbag was preempted. The court refused to grant this relief and reversed a lower court ruling holding that the plaintiff's "no airbag" claim was impliedly preempted. The United States Supreme Court on January 16, 1996, denied a Petition for Writ of Certiorari filed in this matter, and a petition for rehearing. *Id.,* —— U.S. ——, 116 S.Ct. 773, 133 L.Ed.2d 726 (1996).

In reaching its decision the *Tebbetts* court first looked to the United States Supreme Court's decision in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The *Tebbetts* court, as well as my colleagues in the Majority cite to the same passage in the *Cipollone* decision:

When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation.

*Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2618.

The *Tebbetts* court, however, determined that the Act did provide a "reliable indicium of congressional intent" and that the clear intent of Congress as expressed in the Act was to preserve not preempt common law causes of action. It remarked that "given the express utilization of the term 'common law' in the savings clause, we agree with the analysis of those courts that have held that actions such as this are not preempted." *Tebbetts,* 665 A.2d at 348. In support of this interpretation the court looked to the history of the Act. It stated:

Although the original Senate version of the proposed Safety Act contained no saving clause, the committee report noted that the compliance with federal standards would not preempt common law claims: '[T]he Federal minimum safe-

ty standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law.' *S.Rep. No.* 1301, 89th Cong., 2d Sess. 12 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2720. The bill's sponsor, Senator Warren Magnuson, commented: 'Compliance with Federal standards would not necessarily shield any person from broad liability at the common law. The common law on product liability still remains as it was.' 112 *Cong. Rec.* 14230 (1966).

An examination of the House committee report is equally instructive. By inserting the saving clause, the committee 'intended . . . that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability,' *H.R.Rep. No.* 1776, 89th Cong., 2d sess. 24 (1966).

665 A.2d at 347–48.

Like the court in *Tebbetts,* I too read the language of the Act as a clear and plain attempt by Congress to preserve, rather than preempt, common law claims. My position in this matter is strengthened by the recent action of the United States Supreme Court and its denial of certiorari in *Tebbetts,* where the issue at hand had been clearly defined and presented.

The Majority's position is that the language set forth by the Supreme Court in *Cipollone,* which directs the court to refrain from inferring congressional intent where that intent is evident from the explicit provisions of the Act itself, is tempered by the Court's later comments in *Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). Therein the Court wrote that *Cipollone* does not preclude an implied preemption analysis whenever there is a express preemption provision. The Court stated:

The fact that an express definition of the pre-emptive reach of a statute 'implies'—i.e. supports a reasonable inference— that Congress did not intend to pre-empt other matters

does not mean that the express clause entirely forecloses any possibility of implied preemption.... At best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule.

*Freightliner Corp. v. Myrick,* ⸺ U.S. at ⸺, 115 S.Ct. at 1488, 131 L.Ed.2d at 393.

The Court's statements in *Myrick* advise that an implied preemption analysis remains appropriate even where there is an express definition of pre-emption contained in the Act, whenever that language merely "implies" Congressional intent. The provisions of the Act in question do not leave open the question of what matters are and are not preempted. The savings clause found in the Safety Act explicitly preserves common law claims. Because this language provides more than a "reliable indicium" of Congressional intent and expressly states that compliance with safety standards does not exempt any person from liability under common law, an implied preemption analysis is inappropriate.

I also find it necessary to respond to three points raised in the concurring opinion. First, refusing to find pre-emption does not punish a manufacture for complying with federal safety standards. Rather, allowing a claim based on product defect, would hasten the goal of providing safe products for the public.

Second, suggesting that permitting this type of action would lay "the foundation for a patchwork of differing standards throughout the country" ignores the fact that throughout our history, each state has developed its own body of common-law. It is the nature of the Republic that states set individual standards for liability. The concurring opinion seems to be suggesting a federalized approach, to the detriment of the citizens of the individual states.

Third, while I agree that customers have the ability to select and pay for options, this argument ignores the issue, should this case be initially permitted to proceed. The availability of options has nothing to do with the question of pre-emption.

My review of the issue at hand causes me to concur with the statement of my colleague, the Honorable Kate Ford Elliott, in her opinion in *Heiple v. C.R. Motors, Inc.*, 446 Pa.Super. 310, 666 A.2d 1066 (1995). Therein she stated "we find a clear statement by Congress that common law causes of action are not in conflict with the goals and purposes of the Safety Act. Therefore, we are precluded from finding such a conflict by implication." 446 Pa.Super. at 351, 666 A.2d 1066. In closing she cites to a passage from the decision of this court in *Gingold v. Audi–NSU–Auto Union, A.G., supra.*, which I too find compelling:

> A finding of no federal preemption [of state law causes of action] merely allows [plaintiff] to raise [his] passive restraint claims at trial. This by no means insures that [he] will prevail. It is not inconceivable that a jury could reject the claims ... [T]he only issue before us is whether Congress intended that such issues go before juries. It did. Congress articulated this intent in section 1397[k]. ...
>
> ...
>
> ... Tort actions can lead to greater insights into the inherent hazards or shortcomings of existing occupant restraint systems and test the public's acceptance of new systems through jury verdicts. Moreover, 'the specter of damages actions may provide manufacturers with added dynamic incentives to continue to keep abreast of all possible injuries stemming from the use of their product so as to forestall such actions through product improvement.' ...
> Viewed in this manner, section 1397[k] is in complete harmony with the purpose of the Act as set forth in section 1381.
>
> *Gingold, supra* at 54–55, 360, 567 A.2d at 326, 329 (citations omitted).

*Heiple v. C.R. Motors, Inc.*, 666 A.2d at 1086–7.

For the above reasons I would find that plaintiff's "no air bag" claim is not preempted by federal law, and, therefore, I dissent from the Majority's ruling. See also the recent decision of the Commonwealth Court following the reasoning in

*Heiple, Muntz v. Commonwealth of Pennsylvania,* 674 A.2d 328 (Pa.Cmwlth.1996).